USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 07/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

RENEA SUTTON, individually

Plaintiff,

-v-

LIGHTNING SHARED SCOOTER COMPANY, LLC, LIGHTNIGHT SHARED SCOOTER CO., LTD., SEAN MICHAEL SPICER, STEPHON XAVIER MARBURY, NICHOLAS AARON YOUNG, JOHN OR JANE DOE #1, JOHN OR JANE DOE #2 JOHN OR JANE DOES #3-#20,

Defendants.

---------------------------------------------------------------------- X

25-cv-07797 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Renea Sutton ("Plaintiff") sued Lightning Shared Scooter Company, LLC, Lightning Shared Scooter CO., LTD., John/Jane Does 1–20, Sean Michael Spicer ("Spicer"), Stephon Xavier Marbury and Nicholas Aaron Young for their perpetuation of a fraudulent investment scheme. Spicer moves, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), to dismiss Plaintiff's amended complaint. Dkt. No. 16. For the reasons that follow, the motion is granted.

**BACKGROUND**

The Court accepts the following allegations as true for the purposes of the motion.

This complaint arises out of an allegedly fraudulent scheme to which Plaintiff, a United States Army veteran, and an unknown number of others fell victim. Dkt. No. 5 (the "First Amended Complaint" or "FAC") ¶ 6. The scheme captivated Plaintiff with promises of "guaranteed returns" and references to becoming a millionaire. *Id.* ¶ 38. Plaintiff was drawn in through the primary entity associated with the scheme, the "Lightning Shared Scooter Company"

("LSSC"), which supposedly let her purchase "scooters" that the company would then rent out, producing a stable, "daily" income. *Id.*[1]

In May 2025, Plaintiff made a $960 investment in LSSC, the lowest tier of investment that the company offered. *Id.* ¶ 58. Soon, the apparently healthy profit she believed she was earning, along with the company's multipronged sales tactics—consisting of online raffles, in-person conventions, an online chat room (with John and Jane Does #3 as avatars answering investor questions), and video promotions produced by celebrities including Spicer, a former White House Press Secretary, as well as Defendants Marbury and Young, both former players in the National Basketball Association ("NBA")—induced her to pour in another $22,040 (mostly through cryptocurrency). *Id.* ¶¶ 41, 48–52, 58. After just three months, the value of her investment in LSSC had grown to nearly $100,000 according to LSSC's app which tracked her investment. *Id.* ¶ 44. Meanwhile, her investments in two associated platforms, LSSB and LTEC, had supposedly grown to over $7 million. *Id.*[2]

But in late July 2025, signs of trouble began to emerge. LSSC told Plaintiff that it had been a victim of fraud, and demanded she pay a "verification fee" of $2,300 to restore her accounts, to which she obliged. *Id.* ¶¶ 63–65. Then, the company's explanation shifted: her investments had in fact been frozen by a third party and could not be released until winter 2027. *Id.* ¶¶ 66–67. But LSSC apparently thought it could extract still more money from Plaintiff, directing her to invest in separate platforms, Ace Alliance and Crown Cryptocurrency

[1] Plaintiff names both "Lightning Shared Scooter Company, LLC", based in California, and "Lightning Shared Scooter Co, Ltd," based in Colorado, as Defendants. The Court refers to them collectively as "LSSC."

[2] Plaintiff does not clearly specify how much money she invested in total across all three platforms. She alleges that she "increased her level of investment to $23,000.00" in the "LSSC Scooter business," but does not specify her precise investments in LSSB and LTEC. *Id.* ¶ 58.

Investment Groups, operated by John or Jane Doe #1 and John or Jane Doe #2, respectively. *Id.* ¶¶ 24, 29, 69–71. At that point, Plaintiff decided to file this complaint, in which she asserts claims against all Defendants for (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *id.* ¶¶ 76–85; (2) fraud, ¶¶ 86–92; (3) conspiracy to commit fraud, ¶¶ 93–98; (4) breach of contract, ¶¶ 99–103; (5) conversion, ¶¶ 104–108; (6) unjust enrichment, ¶¶ 109–113; (7) breach of fiduciary duty, ¶¶ 114–119; and (8) negligent infliction of emotional distress, ¶¶ 120–126.

## PROCEDURAL HISTORY

Plaintiff initiated this case *pro se* by complaint filed on September 19, 2025. Dkt. No. 1. She named "Lightning Shared Scooter CO., LTD.," "Lightning Shared Scooter Company, LLC," and three John/Jane Does as Defendants. *Id.*

On September 25, 2025, Plaintiff filed the amended complaint. Dkt. No. 5. She named the same Defendants, as well as Spicer, Marbury, and Young. *Id.* On November 14, 2025, Spicer filed his motion to dismiss. Dkt. No. 16. Plaintiff filed an opposition to the motion to dismiss on December 29, 2025. Dkt. No. 31. Spicer then filed a reply memorandum of law in support of the motion to dismiss on January 5, 2026. Dkt. No. 33.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not accept as true "[t]hreadbare recitals of

the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

"The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest." *Brock v. Zuckerberg*, 2021 WL 2650070, at *2 (S.D.N.Y. June 25, 2021) (citing *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (requiring that pro se litigants allege sufficient facts to indicate deprivation of a constitutional right).

A claim for fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b). A plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (stating that to plead fraud with particularity, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were

fraudulent"). Allegations that are "conclusory and unsupported by assertions of fact" are not sufficient to meet the Rule 9(b) standard. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). However, plaintiffs must still allege facts that "give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

## DISCUSSION

### I. RICO

Defendant first moves to dismiss Plaintiff's claim that he violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* 18 U.S.C. § 1964(c); FAC ¶¶ 76–85; Dkt No. 16 at 7.

The civil RICO provision allows "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . [to] sue . . . in any appropriate United States district court and . . . recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)–(c)). A defendant is only liable under the civil RICO statute

if they have "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

Because RICO "contemplate[s] that a person violates the statute by conducting an enterprise through a pattern of criminality," *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013), a plaintiff must plead "the existence of two distinct entities: (a) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name," *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). A RICO enterprise "is a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It must have at least three structural features: (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

To establish a pattern of racketeering activity, a plaintiff "must demonstrate, as to each defendant, that while employed by or associated with an enterprise . . . through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." *AFSCME Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013). To show such a pattern, the plaintiff must plead "at least two predicate racketeering acts that amount to or pose a threat of continued criminal activity, and are . . . related both to each other ('horizontal' relatedness), and to the enterprise ('vertical' relatedness)." *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics

and are not isolated events.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). The two predicate acts must have been committed within ten years of each other. 18 U.S.C. § 1961(5). A "plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)).

In her amended complaint, referring to "Defendants" collectively, Plaintiff alleges that they "conducted and participated in the conduct of affairs through a pattern of racketeering activity," but notes only that the activity "engaged in by defendants include mail fraud . . . wire fraud . . . [and] bank fraud . . .". FAC ¶¶ 79–80. In her opposition brief, she adds that Spicer's "promotional activities," in particular, were "essential to the enterprise's ability to attract investors." Dkt. No. 31 at 6. She argues that "whether . . . Spicer's role constituted participation" in the enterprise "should not be resolved at the pleading stage." *Id.* Plaintiff's allegations as to Spicer are insufficient to state a claim under the RICO statute for several reasons.

First, Plaintiff does not sufficiently allege Spicer's involvement in two predicate acts as required. Where the pattern of racketeering activity alleged consists of instances of fraud, those allegations are subject to the heightened pleading requirements of Rule 9(b). *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Accordingly, courts in this district have consistently dismissed RICO claims for which fraud is alleged as the predicate illegal act when a plaintiff fails to provide sufficient allegations about the content or timing of

those acts. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (wire fraud allegations must "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent" to meet the 9(b) standard). Neither in the FAC nor in her opposition brief does Plaintiff point to particular statements (or omissions) made by Spicer that were fraudulent, let alone specify the "contents and the reason *each* communication was fraudulent." *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (summary order) (emphasis added). Rather, Plaintiff alleges only that Spicer "endorsed" the investment and "presented it as stable, safe and profitable," without specifying where and when he did so, what he said about the investment to convey it was stable, safe and profitable, whether he knew his statements to be false, or why these representations in fact were fraudulent or even false at the time. Dkt. No. 31 at 2; *see Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.) (rejecting "fraud by hindsight" since "failure to make . . . perceptions does not constitute fraud"). Such statements, even if they were quoted verbatim from Spicer's videos, amount to non-actionable puffery. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("puffery or misguided optimism is not actionable as fraud."); *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020) ("Generic, indefinite statements of corporate optimism typically are not actionable" as fraud). Accordingly, these "bare-bones allegations" are insufficient under the heightened 9(b) pleading standard. *Lundy v. Cath. Health Sys. of Long Island Inc.,* 711 F.3d 106, 119 (2d Cir. 2013).

Second, Plaintiff does not allege facts to suggest Spicer maintained the requisite direction or control over the enterprise's affairs required to meet the "operation or management test" outlined by the Supreme Court in *Reves*. *See Reves*, 507 U.S. at 179; 18 U.S.C. § 1962(c). On a motion to dismiss, Plaintiff is required to plead facts that, if proven, would satisfy that inquiry;

"RICO plaintiffs must plausibly allege that each defendant played '*some* part in directing the enterprise's affairs' if the RICO claim is to survive a motion to dismiss." *D'Addario v. D'Addario,* 901 F.3d 80, 103 (2d Cir. 2018) (quoting *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004)). While "liability under § 1962(c) is not limited to upper management," only participants who "exert control" over the enterprise or are operating "under the direction of upper management" are liable under § 1962(c). *Reves*, 507 U.S. at 179.

Plaintiff repeatedly refers to Spicer as a "public spokesperson" and an "operator" of the "LSSC Enterprise." FAC ¶¶ 12, 14; Dkt. No. 31 at 5.[3] However, those allegations are conclusory absent any non-conclusory allegations that would establish them as plausible. *See Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 204 (E.D.N.Y. 2022) ( "conclusory allegations" that defendant led the enterprise without "articulat[ing] any cognizable structure" to such enterprise or how the defendants "managed the enterprise" are insufficient); *Trib. Co. v. Purcigliotti*, 869 F. Supp. 1076, 1097 n.11 (S.D.N.Y. 1994), *aff'd sub nom. Trib. Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995) (allowing a plaintiff to "nam[e] an enterprise" a certain way to satisfy the "operation or management test" would "nullify *Reves*"). Plaintiff does not plausibly allege—such as by pointing to LSSC's website, public materials, or any other facts—that Spicer's participation went beyond contracted promotional videos. To the contrary, the facts as alleged by Plaintiff suggest instead that Spicer was marginally involved in the enterprise; promotional videos by an outside entity or individual do not constitute the requisite management or direction

[3] In her complaint, Plaintiff alleges that all Defendants, including Spicer, together constituted an "enterprise," which she calls the "LSSC Enterprise," as defined by 18 U.S.C. 1961(4). FAC ¶ 36. However, she alleges no facts that would give rise to a plausible inference that two former basketball players and a former White House spokesman constituted an "enterprise" under RICO alongside LSSC, associated platforms, and a suite of fictitiously named defendants who appeared on the online chat platform such as "Professor Eric."

required by § 1962(c). *See Santana v. Adler*, 2018 WL 2172699, at *7 n.6 (S.D.N.Y. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 2170299 (S.D.N.Y. May 10, 2018) (providing professional services is "not enough" to establish "participation in the operation or management of the enterprise itself"); *Zito v. Leasecomm Corp.*, 2003 WL 22251352, at *18 (S.D.N.Y. Sept. 30, 2003) ("making statements knowing that they will be exploited by an enterprise" does not constitute playing a "part in directing" that enterprise).

Plaintiff's RICO claim against Spicer is accordingly dismissed.

## II. State Law Claims

In addition to her federal RICO claim, Plaintiff brings or could be understood to bring a variety of different state law claims against Spicer. Spicer argues that if the Court dismisses the RICO claim, it should decline to exercise supplemental jurisdiction over the remaining state law claims. If "a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction" over the remaining related state-law claims if they derive from the same common nucleus of operative fact. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because the state and federal law claims arise from the same set of factual circumstances and present some similar legal issues, and because the state-law claims are meritless, retaining jurisdiction in this case would promote judicial economy and convenience. *See, e.g.*, *Chapman v. Fais*, 540 F. Supp. 3d 304, 309 (E.D.N.Y. 2021); *Auscape Int'l v. Nat'l*

*Geographic Soc.*, 461 F. Supp. 2d 174, 178 n.8 (S.D.N.Y. 2006), *aff'd*, 282 F. App'x 890 (2d Cir. 2008).[4]

**A. Fraud**

In her amended complaint, Plaintiff alleges that Defendants "knowingly and willfully made false and material representations of fact" with respect to LSSC's financial condition and products; that they knew such representations were false or made them with "reckless disregard"; and they intended through those false statements to induce her to transfer money into LSSC. FAC ¶¶ 87–89.

To state a claim for common law fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Budhani v. Monster Energy Co.*, 2021 WL 1104988, at *12 (S.D.N.Y. Mar. 22, 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). Claims for common law fraud under New York law must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity." Fed. R. Civ. P. (9)(b); *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010).

[4] Spicer's motion to dismiss analyzes multiple claims brought by Plaintiff, including breach of contract and negligent infliction of emotional distress, under New York law. *See* Dkt. No. 16 at 8, 10. Neither Plaintiff's opposition brief nor her amended complaint specify the state under which her state-law claims are brought, but she does not object to Spicer's analysis. *See generally* FAC; Dkt. No. 31. Therefore, the parties have implicitly acquiesced to have the claims analyzed under New York law. *See Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 416 (S.D.N.Y. 2023) ("A party may . . . give implied consent sufficient to establish a choice of law when it assumes in its briefs that a particular jurisdiction's law applies").

In the FAC, Plaintiff alleges that "defendants" made "false and material representations of fact" about LSSC "including but not limited to investments in a scooter business, the financial condition of its' business, the quality of its' products, or defendants' intent to perform certain obligations." FAC ¶ 87. However, she does not specify which Defendant made which fraudulent statement.[5] In her brief in opposition to the motion to dismiss, Plaintiff clarifies that Spicer himself "recorded promotional videos, endorsed the investment, presented it as stable, safe, and profitable, and encouraged investors" to rely on these representations. Dkt No. 31 at 2. She also states that LSSC shared these videos through WhatsApp, "Youtube-like reels," and "internal recruitment platforms." *Id.*[6]

Even incorporating these new allegations considering Plaintiff's *pro se* status, Plaintiff has not met the particularity standards of Rule 9(b). First, she does not identify the time or place of the videos' dissemination or when she viewed them. For promotional materials like those at issue here, where determining the exact place and date of dissemination may be difficult, plaintiffs may instead identify and quote from specific materials they relied on and describe why these materials were false. *See ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.*, 957 F. Supp. 1308,

---

[5] In certain circumstances, "group pleading" can satisfy the source identification required by Rule 9(b). *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015). However, there must be an "appropriate factual basis" to conclude that the speaker is part of a "group of affiliates." *Id*. at 171–172. In *Loreley Fin.*—where plaintiffs named "Wachovia" collectively as defendant, even though there were actually three distinct entities all with variants of the name "Wachovia"—the entities *themselves* used this collective name in documents shared with plaintiffs, in part preventing plaintiffs from being able to distinguish the entities. *Id.* at 173. Here, by contrast, Plaintiff herself identifies Spicer as a distinct defendant. Nonetheless, whether Plaintiff has sufficiently alleged that Spicer is part of a "group of affiliates" is not dispositive for this claim, since she fails to provide enough specificity about fraudulent statements by *any* of the defendants to meet the 9(b) particularity requirements for common law fraud.

[6] In her opposition brief, Plaintiff alleges that Spicer provided not only "video promotions" but also "public-facing communications." Dkt. No. 31 at 3. However, she does not point to any specific such "communications," and later in the brief, like in her amended complaint, refers only to Spicer's "video promotions." *See id.* at 5.

1326 (S.D.N.Y. 1997). Because such statements would be "easily identifiable" to defendants, *id.*, the purposes of the particularity requirement—that "defendant has fair notice of the plaintiff's claim" and to "protect a defendant from harm to his or her reputation or goodwill"—would still be served. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). However, Plaintiff does not point to any specific statements made by Spicer, let alone explain why those statements were fraudulent. *See Utts v. Bristol-Myers Squibb Co.,* 251 F. Supp. 3d 644, 681 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) ("merely paraphras[ing] the assertions" made in the company's television advertisements "without providing the exact content of the statements" and not "plausibly alleg[ing] that these representations were false" was insufficient to satisfy particularity). And without pointing to the content of the statements that Spicer made, Plaintiff cannot plead the other common-law elements of fraud, including: that Spicer knew such statements were false; that he made those statements with the intention of inducing reliance; that her alleged reliance on such statements was reasonable; and that Spicer's conduct caused her injury. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) ("plaintiff [must] demonstrate a causal connection between the *content* of the alleged misstatements or omissions and 'the harm actually suffered'") (emphasis added).

Plaintiff also fails to plead scienter. In her opposition brief, she states that Spicer "either knew or recklessly disregarded the fraudulent nature" of LSSC, based on the supposedly "reasonable" inference that a public figure like Spicer who promotes an investment opportunity "either conducted due diligence or consciously disregarded the risk" that investors would rely on his statements. Dkt. No. 31 at 6. Because merely stating that Spicer "knew" of LSSC's fraud without more does not permit a plausible inference of fraudulent intent, the Court interprets

Plaintiff's argument to be that Spicer acted recklessly in promoting LSSC. To plead scienter based on recklessness for common-law fraud, as for securities fraud, requires a "state of mind approximating actual intent," rather than merely a "heightened form of negligence." *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000); *see also Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 75 (S.D.N.Y. 2010) ("The scienter element for [common law fraud] claims is essentially the same as that under federal securities law"). In the "sphere of civil liability," a defendant acts recklessly where the actor "does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk . . . but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *United States v. Reyes*, 164 F.4th 78, 85 (2d Cir. 2026) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)). Recklessness is characterized by an "egregious refusal to see the obvious." *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 269 (2d Cir. 1996) (quoting *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989)).

Plaintiff does not allege facts to support the conclusion that Spicer was highly aware of the probable falsity of his alleged statements. Plaintiff alleges only that Spicer made vague representations about the company's stability and profitability. *Cf. Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 466 (S.D.N.Y. 2023) (making representations about "specific commitments that [Defendant] claimed he knew had been made" constitutes "strong circumstantial evidence" of recklessness, unlike a mere "representation about corporate performance"); *see also Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.,* 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (a "strong inference" of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent") (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,

551 U.S. 308 (2007)). Plaintiff does not allege facts to support that Spicer was in possession of or had access to information that would have demonstrated that his statements were not true. The fact that a statement is ultimately shown to be false does not mean that its maker knew it to be false or was reckless with regard to its truth or falsity at the time it was made. *See IN re Paretum Sec. Litig.*, 2021 WL 3540779, at *13 (S.D.N.Y. Aug. 11, 2021) (in the securities fraud context, finding that a claim premised on "a statement believed to be true when made, but later shown to be false is insufficient.") (quoting *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *12 (S.D.N.Y. Apr. 2, 20202)). There is no allegation that Spicer conducted due diligence or did any further investigation into the company. While it may not have been prudent for Spicer to lend his name to an enterprise about which he knew little to nothing (or to have relied on others with respect to that enterprise), common law fraud requires more than negligence. *See Novak*, 216 F.3d at 312; *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 720 (S.D.N.Y. 2018) ("while [plaintiff] may have an argument that [defendant] should have done more, that amounts to negligence, not recklessness"). In addition, Plaintiff does not allege facts giving rise to the inference that Spicer had both "motive and opportunity" to commit fraud, such as through a payment structure that rewarded him based on the number of new investors he recruited, or a position that would have given him inside information about LSSC. *Cf. Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 219 (S.D.N.Y. 2018) (alleging that defendants received commissions based on the amount of money raised from plaintiff and others sufficed to allege motive); *see also I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017).

Plaintiff argues in her opposition brief that Rule 9(b) should be "applied flexibly" when the plaintiff "lacks access to detailed internal information." Dkt. No. 31 at 6. Plaintiff is correct

that pleading fraud based only on information and belief is permitted where the facts are "peculiarly within the opposing party's knowledge." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Here, however, Plaintiff alleges she *relied* on externally transmitted statements made by Spicer and thereby admits that those statements do not constitute "internal information" that she cannot access or identify. Plaintiff would have known the materials upon which she relied and should be able to allege why the statements in them were false. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (in alleging defendant publicly disseminated false information, plaintiff concedes the "facts underlying his claim" are "not peculiarly within [defendant]'s knowledge").

Accordingly, the Court dismisses Plaintiff's common law fraud claim.

**B. Conspiracy to Commit Fraud**

Plaintiff's third claim is for civil conspiracy. She alleges that "Defendants, acting in concert with each other and/or others . . . entered in an agreement and common scheme" to commit fraud." FAC ¶ 95.

To support a claim of civil conspiracy under New York law, a "plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006). "New York does not recognize civil conspiracy as an independent cause of action." *Reich v. Lopez*, 38 F. Supp. 3d 436, 460 (S.D.N.Y. 2014). "Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986).

Plaintiff may plausibly allege that LSSC committed the tort of intentional fraud, based on its complex, multi-level scheme to convince thousands of individuals to invest in renting scooters that likely did not exist, pay bogus verification fees to "restore" their accounts, and then direct them to associated platforms to defraud them of additional money. FAC ¶¶ 37, 63–65, 69. But Plaintiff fails to allege any of the remaining elements necessary to establish that Spicer is liable based on a theory of conspiracy to commit fraud.

Primarily, Plaintiff fails to allege that Spicer formed a conscious agreement with LSSC or anyone else to defraud Plaintiff and other investors. She alleges that Spicer promoted LSSC, that his activities were "essential" to LSSC's ability to attract investors, and that he was a "spokesperson" and "operator." Dkt. No. 31 at 6; FAC ¶¶ 12–14. In some cases, courts can infer "individual agreement to the objectives of the fraud" when "knowing assistance" was provided. *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 254 (S.D.N.Y. 2005). In *Winnick*, for instance, the Court interpreted defendant's emails, the full texts of which were submitted to the court, to plausibly allege defendant's actual knowledge and infer agreement. *See id.* Plaintiff here offers no such facts. Receiving payment for video promotions alone does not suggest any prior agreement to commit fraud any more than the kinds of business relationships that other courts have held insufficient to infer agreement. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019) (conspiracy agreement cannot be found "based solely on defendants' common employment"); *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) ("vigorous promotion" of co-defendant's stock does not show agreement among defendants); *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 560 (S.D.N.Y. 2004), *aff'd*, 156 F. App'x 413 (2d Cir. 2005) ("supposed transfer

of funds from an entity controlled" by one defendant to another is "insufficient to support an inference" that defendants agreed to defraud).

Additionally, Plaintiff fails to plead the third element, scienter, requiring "intentional participation with a view to furtherance of the common design." *Arlinghaus v. Ritenour*, 622 F.2d 629, 640 (2d Cir. 1980) (internal citation omitted); *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 704 (Bankr. S.D.N.Y. 2008) ("New York law requires actual intent by the defendant to support a conspiracy claim"). As explained above, Plaintiff's allegations do not suffice to plausibly allege Spicer's recklessness, let alone actual intent, in advancing the fraudulent scheme. Negligent disregard, including lack of due diligence and failure to investigate, do not constitute actual intent. *See Teman v. Zeldes Needle Cooper LLP*, 2025 WL 3778680, at *11 (S.D.N.Y. Dec. 31, 2025) ("civil conspiracy requires a showing of intentional conduct") (quoting *Rosen v. Brown & Williamson Tobacco Corp.*, 782 N.Y.S.2d 795, 795 (2d Dep't 2004)); *cf. United States v. Svoboda*, 347 F.3d 471, 479 (2d Cir. 2003) ("conscious avoidance" of the "illegal purpose of a conspiracy" is insufficient to show defendant's joinder in a conspiracy).[7]

Accordingly, the motion to dismiss the civil conspiracy count is granted as well.

### C. Negligent Misrepresentation

Plaintiff might be understood to plead a claim for negligent misrepresentation on the theory that Spicer was negligent in endorsing LSSC without conducting any due diligence and

[7] Construing Plaintiff's allegations liberally, they also could be read to allege that Spicer aided and abetted LSSC's fraud. But that would not take Plaintiff across the line from the possible to the plausible. *See Iqbal*, 556 U.S. at 663. A plaintiff can be held liable for aiding and abetting fraud under New York law only when he has actual knowledge of the fraud. *See Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (aiding and abetting fraud requires plaintiff "show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission"). However, as noted *supra* pp. 13–15, Plaintiff has not plausibly alleged Spicer knew of LSSC's fraudulent nature.

that it was Spicer's endorsement that caused Plaintiff to invest.[8] "Liability for negligence may result only from the breach of a duty running between a tortfeasor and the injured party." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). That is, a party who without sufficient care circulates "a thought" or launches a statement with "the explosive power resident in words" is not thereby rendered liable "in an indeterminate amount for an indeterminate time to an indeterminate class" to all persons who are exposed to the thought or statement and come to rely upon it. *Ultramares Corp. v. Touche*, 174 N.E. 441, 444–45 (N.Y. 1931) (Cardozo, J.). Instead, under New York law, a claim for negligent representation will lie only where there is requisite "privity" or a "relationship resembling privity" pursuant to which the defendant is "render[ed] . . . liable for negligent misrepresentation." *Kimmell*, 675 N.E.2d at 454; *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of NY*, 375 F.3d 168, 187 (2d Cir. 2004) ("[M]isstatements are actionable only if the defendant is 'under a duty to the plaintiff to exercise reasonable care in giving the information, and plaintiffs' reliance upon the information [is] foreseeable.'") (quoting *Heard v. City of New York*, 623 N.E.2d 541, 545 (N.Y. 1993)).

Plaintiff has not alleged that there is any contractual privity or a relationship approaching privity between herself and Spicer. Absent contractual privity, Spicer could only be liable for the tort of negligent misrepresentation if his relationship with Plaintiff was "one 'approaching privity, if not completely one with it.'" *Credit Alliance Corp. v. Arthur Anderson & Co.*, 483 N.E.2d 110, 115 (N.Y. 1985) (quoting *Ultramares*, 174 N.E. at 446). Absent such a special relationship, "there is no point at which such [tort] actions would stop." *Id*. A special relationship that is akin to that of privity may be established only where the alleged

[8] A *pro se* plaintiff's complaint is not limited to "the legal claims set out in [their] pleadings," nor is Plaintiff required to enumerate each claim as a "cause of action." *Phillips v. Girdich*, 408 F.3d 124, 129–30 (2d Cir. 2005).

misrepresentation falls within the "orbit of duty" that a defendant owes to the third party. *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015) (quoting *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 59–61 (2d Cir. 2012)). The extent of that orbit must be carefully analyzed "to limit the legal consequences of wrongs to a controllable degree and protect against crushing exposure to liability." *Bayerische Landesbank*, 692 F.3d at 59 (quoting *Strauss v. Belle Realty Co.*, 482 N.E.2d 34, 36 (N.Y. 1985)). To show they fall within that orbit of duty, "a plaintiff must establish that (1) the defendant had awareness that its work was to be used for a particular purpose; (2) there was reliance by a third party known to the defendant in furtherance of that purpose; and (3) there existed some conduct by the defendant linking it to that known third party evincing the defendant's understanding of the third party's reliance." *Bayerische Landesbank*, 692 F.3d at 59 (citing *Credit Alliance Corp.*, 483 N.E.2d at 118); *see Parrott v. Coopers & Lybrand, LLP*, 741 N.E.2d 506, 508 (N.Y. 2000) (setting out the same test and noting that "[t]hese indicia, 'while distinct, are interrelated and collectively require a third party claiming harm to demonstrate a relationship or bond with the once-removed [defendant].'") (quoting *Security Pac. Bus Credit v. Peat Marwick Main & Co.*, 597 N.E.2d 1080, 1083 (N.Y. 1992)). "Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Kimmell*, 675 N.E.2d at 454. However, where the complaint lacks "allegations showing a relationship," a claim alleging negligent misrepresentation must be dismissed. *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011); *see also Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 233 (S.D.N.Y. 2008) ("It is well established that plaintiffs must allege the existence of a 'special relationship' with the defendants in order to state a claim" of negligent

misrepresentation) (citing *ABC Cap. Mgmt. v. Askin Cap. Mgmt.*, 957 F. Supp. 1308, 1333 (S.D.N.Y. 1997)).

Plaintiff alleges here that Spicer lent his "name and reputation" to LSSC in promoting its products. Dkt No. 31 at 2. She states that he promoted investments in LSSC as "stable, safe, and profitable" and encouraged investors to "rely on his representations." *Id.* Considering whether these sparse facts establish a relationship akin to privity, Plaintiff does not plausibly allege a special relationship between Plaintiff and Spicer. The complaint does not allege that Spicer had any contact with Plaintiff or even knew of her existence, unlike in *Kimmell*, where defendant personally met with each plaintiff, thereby giving rise to a relationship of trust. 675 N.E.2d at 265; *see also Mandarin Trading*, 944 N.E.2d at 1110 (no privity-like relationship exists in the absence of "even the bare, minimal contact" between the parties). Nor has Plaintiff alleged that Spicer "held or appeared to hold unique or special expertise" such that Spicer should have been aware that his words would have induced reliance. *Kimmell*, 675 N.E.2d at 454. Spicer's alleged credentials— that he previously served as the White House Press Secretary and as a staff member for various Republican officials—do not evince any unique or special knowledge about investments in general or scooters in particular. FAC ¶ 11. This is entirely distinct from the professionals recognized by the New York Court of Appeals in *Kimmell* such as "lawyers and engineers" who "by virtue of their training and expertise. . . may have special relationships of confidence and trust with their clients." 675 N.E.2d at 454; *see EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 282 (S.D.N.Y. 2004) (defendant not alleged to have "any special professional training or past business experience that would have given him the type of unique expertise possessed by the *Kimmell* defendants"). Nor does Spicer's vague endorsement of LSSC—such as its supposed profitability—permit the inference that Spicer held

himself out as an insider, rather than a celebrity offering a generalized endorsement. *Cf. Chung v. Pure Fishing, Inc.*, 2022 WL 866769, at *6 (E.D.N.Y. Mar. 23, 2022) ("Negligent-misrepresentation claims based on special expertise arise when a defendant misrepresents scientific or technical facts, such as a product's health benefits, or the maintenance requirements of airplanes").

More importantly, Plaintiff has not alleged any conduct "linking" Defendant to her that would "evince[e] the defendant's understanding" of her reliance. *Credit Alliance Corp.*, 483 N.E.2d at 118. Merely recording promotional videos for a company does not establish the requisite link. "[C]ourts have consistently held that advertisements alone are not sufficient," *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015), as such mass communication does not "foster[] a special relationship with plaintiffs or provide[] them with personalized information," *id.* (quoting *Austin v. Albany Law Sch. Of Union Univ.*, 957 N.Y.S.2d 833, 844–45 (N.Y. Sup. Ct. 2013)); *see also Peat Marwick Main & Co.*, 597 N.E.2d at 1085 (no special relationship where the parties' only contact was a "single unsolicited phone call"); *see also Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 287 (S.D.N.Y. 2019) ("That a defendant 'knew in general that prospective [commercial participants] would rely on' its statements is insufficient") (quoting *Sykes v. RFD Third Ave. 1 Assocs., LLC*, 938 N.E.2d 325 (N.Y. 2010)). Courts have found the requisite "link" only where there was evidence of a much closer relationship between the parties. *See 105 Mt. Kisco Assocs. LLC v. Carozza*, 2019 WL 6998008, at *14 (S.D.N.Y. Dec. 20, 2019) ("face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties" can suffice, but a merely "foreseeable use" of defendant's statements does not).

Plaintiff therefore has not adequately alleged a negligent misrepresentation claim.

**D. Breach of Contract**

Spicer also moves to dismiss Plaintiff's breach of contract claim. Dkt. No. 16 at 8. Plaintiff alleges that she entered into a contract whereby she would purchase or rent scooters and "related hardware" in exchange for "residual income and profit" from those scooters. FAC ¶ 100. She states that she "duly performed" all her obligations but that Defendants both failed to pay her profits as required and denied her access to her accounts. *Id.* ¶¶ 101–02.[9]

Plaintiff alleges that she accepted Defendants' offer to invest in the "Millionaire Training Program," based on a flyer the company distributed. FAC ¶ 38. The flyer, which she includes in her complaint, outlines each level of investment (beginner, primary, intermediate, advanced, and "Wealth Plan"), the corresponding number of scooters one could purchase with each investment, and the daily and monthly income which these scooters would supposedly provide for an investor. *Id*. In her initial complaint, where Spicer was not included as a defendant, Plaintiff alleges that she signed a 3-year contract with "defendants" to "invest in its scooter products" and "other products defendants offered" on their "public website." Dkt. No. 1 ¶ 20. In her FAC, with Spicer now included as a defendant, she repeats that allegation verbatim. FAC ¶ 37.

New York law generally requires a showing of privity between the plaintiff and the defendant as a baseline for contract claims. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023).[10] A party cannot be held liable for breaching a contract to which he or she is not a party. *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("It is well established that, generally, a party who is not a signatory to

---

[9] Plaintiff alleges once in the complaint that the contract was signed on May 20, 2025, and then in another place, alleges that it was signed on June 1, 2025. FAC ¶¶ 37, 100. The discrepancy is not material to the instant motion.

[10] The only exception recognized in this Circuit is that of the third-party beneficiary, which is plainly inapplicable here, since any contract between Spicer and LSSC would not have been intended for Plaintiff's benefit. *See MacNaughton*, 67 F.4th at 101.

a contract cannot be held liable for breaches of that contract"). Plaintiff appears to have improperly "lump[ed] all the defendants together . . . and provide[d] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order); *see also Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004). Plaintiff does not allege that Spicer even knew of her existence, let alone that he formed an agreement with her sufficient to establish a contract. *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006).[11]

Nor has Plaintiff stated a claim against Spicer based on the contract she had with LSSC. To hold a non-party liable, the plaintiff must allege that the non-party is an alter ego to the party or that the corporate veil should otherwise be pierced. *See, e.g.*, *Sesa, Inc. v. Terrafina*, 2020 WL 6382919, at *3 (S.D.N.Y. Oct. 30, 2020). "Under New York law, the corporate veil may be pierced and an individual or another corporation may be held liable for the corporation's obligations upon a finding that '(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or "other wrong"; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff.'" *Id.* (quoting *In re Vebeliunas*, 332 F.3d 85, 91–92 (2d Cir. 2003)); *see also Freeman v. Complex Consulting Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). Even though Plaintiff refers to Spicer as a "spokesperson" and "operator" of LSSC in her complaint,

[11] In her opposition brief, Plaintiff argues that Spicer's conduct "went beyond a passive or incidental role" and that whether he "owed duties" from his "role as a promoter and endorser" is a "mixed question of law and fact" that should not be decided at this stage of the proceedings. Dkt. No. 31 at 7. However, any such "duties" from promotional activities alone would not give rise to contractual obligations without the requisite offer and acceptance ensuring mutual assent to form a contract. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).

.

she has not plausibly alleged that he maintained any involvement beyond recording video promotions on its behalf. FAC ¶¶ 12, 14. And even assuming, arguendo, that he did hold the two positions she alleges, they would not show the corporation was "so dominated" by Spicer, and its "separate identity so disregarded," that it "primarily transacted" Spicer's "business rather than its own." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 411 (S.D.N.Y. 2012) (quoting *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002)).

Accordingly, there is no justification to hold Spicer individually liable for breach of contract, and the breach of contract claim against him must be dismissed.

**E. Conversion**

Spicer next seeks to dismiss Plaintiff's claim for conversion. Dkt. No. 16 at 9. Plaintiff alleges in her amended complaint that she had "the immediate right to possess" more than $6.7 million, which was "entrusted to defendants," who "wrongfully exercised dominion and control" over the money for their "own use." FAC ¶¶ 104–08.

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (quoting *Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso*, 660 N.E.2d 1121, 1126 (N.Y. 1995)); *see also LoPresti v. Terwillige*, 126 F.3d 34, 41 (2d Cir. 1997). "To plausibly allege a conversion claim, a plaintiff must show: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Benex LC v. First Data Merch. Servs. Corp.*, 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).

"Plaintiffs who bring conversion claims against multiple defendants are not required to specify in their complaint which defendant received, has possession of the funds, or which of them has or had the power to return the funds." *Louros v. Cyr*, 175 F. Supp. 2d 497, 515 (S.D.N.Y. 2001). They must, however, show "that each individual defendant . . . played some role" in the conversion. *Segal v. Bitar*, 2012 WL 273609, at *9 (S.D.N.Y. Jan. 30, 2012) (citing *Precision Assocs. v. Panalpina World Transp.*, 2011 WL 7053807, at *14 (E.D.N.Y. Jan. 4, 2011)). This can be accomplished, for example, by alleging facts showing that "all the named defendants worked . . . in concert" to deprive plaintiffs of property. *Louros*, 175 F. Supp. 2d at 515.

Here, Plaintiff has not alleged any facts showing Spicer "played some role" in the conversion. She does not allege he was responsible for the daily operation of LSSC's website or scooter operation, nor in the "decision to prevent [LSSC investors] from withdrawing the money in their accounts." *Segal*, 2012 WL 273609, at *10; *cf. In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 413 (Bankr. S.D.N.Y. 2013) (the fact that defendant was the president and sole shareholder of the company is sufficient to show he played "some role"). In fact, she does not even allege that Spicer had knowledge of any improper transfers of Plaintiff's property. *See DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014) (dismissing conversion claim where plaintiff did not allege that the defendants "ever participated in or had knowledge of any improper transfers" of property).

Plaintiff's conversion claim is therefore dismissed as against Spicer.

**F. Unjust Enrichment**

Spicer next moves to dismiss Plaintiff's claim for unjust enrichment. Dkt. No. 16 at 9. Plaintiff alleges in her amended complaint that "defendants have been enriched by receiving investment monies and investment opportunities that rightfully belonged to plaintiff" and that

their enrichment was obtained "at the expense of plaintiff." FAC ¶¶ 110–111. She also states that "equity and good conscience require that defendants make restitution" to her, and that it "would be unjust" for them to retain benefits conferred. *Id.* ¶ 112.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.)). "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading*, 944 N.E.2d at 1110 (internal citation and quotation marks omitted). Although "a New York unjust enrichment claim requires no 'direct relationship' between plaintiff and defendant," *Myun-Uk Choi v. Tower Research Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018), "a claim will not be supported if the connection between the parties is too attenuated," *id.* (quoting *Mandarin Trading*, 944 N.E.2d at 1111).

"New York courts have not enunciated a clear test for determining whether a relationship is 'too attenuated.'" *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 744 (E.D.N.Y. 2015). It is clear, however, that although privity is not required, *see Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007), some minimum dealings or contacts are required, *see Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012). "Absent any direct contact, a relationship may nevertheless be sufficiently proximate to sustain an unjust enrichment claim if, for example, the defendant was 'an officer of the corporation with which the plaintiff had contracted,' or where the defendant was 'aware[] of the plaintiff and the potential negative impact of its own conduct on the plaintiff[.]'" *Golden Loop, LLC v. Live Nation Ent., Inc.*, 2026

WL 1192539, at *6 (S.D.N.Y. May 1, 2026) (quoting *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 464 (S.D.N.Y. 2014)); *see also Anhui Aido Garment Co. v. Stern*, 2025 WL 1663860, at *8 (S.D.N.Y. June 12, 2025) (finding relationship sufficiently proximate where plaintiff "alleges it had a contractual relationship" with a "company under common control" with the defendant, and that the defendant "reached out to [plaintiff] on behalf of [the third party] to attempt to negotiate another deal"); *Bashian & Farber, LLP v. Syms*, 102 N.Y.S.3d 255, 258 (2d Dep't 2019) (finding relationship sufficiently proximate where the defendant and third party were husband and wife, and the wife "attended meetings between [her husband] and the plaintiffs," and other evidence showed she was "at least aware[]" of plaintiffs' existence).

Construing Plaintiff's complaint liberally, she alleges that she lost the investment she made in LSSC, that Spicer was compensated in some manner for his endorsement of the business, that it was unjust that he profited from his endorsement, and that she lost money as a result of his endorsement. Plaintiff does not allege any direct contact with Spicer or that Spicer even knew of her existence. As Plaintiff herself acknowledges, she sent the money she invested to LSSC and associated platforms, not to Spicer. FAC ¶ 40. Any link between payments that Spicer might have received for the promotional videos and the money Plaintiff invested in LSSC is too attenuated to support liability on this claim. *See In re RetailMeNot Browser Extension Litig.*, 2026 WL 820585, at *6 (S.D.N.Y. Mar. 25, 2026) ("[t]o prevail, the proponent of the cause of action must establish that *it* conferred a benefit on the other party") (quoting *Maple Med., LLP v. Scott*, 138 N.Y.S.3d 61, 77 (2d Dep't 2020)).

Plaintiff's claim independently fails because she has not adequately alleged that Spicer ought not in "equity and good conscience" retain any payments he received from LSSC for video promotions. This inquiry dovetails with her fraud claims; absent plausible allegations that Spicer

had knowledge of or participated in fraud, equity and good conscience would not compel disgorgement of payments he received for services he rendered. *See Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 513–14 (S.D.N.Y. 2009) (when the plaintiff's other claims, sounding in fraud, have been dismissed, equity does not prevent dismissing the unjust enrichment claim). Without alleging knowledge or participation in LSSC's fraud, the facts as alleged only permit the plausible inference that Spicer was a good-faith service provider to an alleged Pyramid- or Ponzi-like scheme. *See In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 674 (Bankr. S.D.N.Y. 2000), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001) (suit dismissed against brokers who had no knowledge of Ponzi scheme and received "fair or reasonably equivalent value" for their services); *In re Universal Clearing House Co*., 60 B.R. 985, 999 (D. Utah 1986) (even though "landlord, salaried employees, accountants and attorneys, and utility companies" who provided services "all assisted the debtors in the furtherance of their fraudulent scheme," these individuals are not thereby liable to defrauded investors). Therefore, equity and good conscience do not "militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

Plaintiff's unjust enrichment claim is dismissed as against Spicer.

### G. Breach of Fiduciary Duty

Spicer also seeks dismissal of the claim for breach of fiduciary duty. Dkt. No. 16 at 8–9. Plaintiff alleges in her complaint that Defendants "stood in a position of trust and confidence" toward her and that they breached their duty of loyalty, good faith, honesty, and fair dealing by "intentionally mismanaging" her investments. FAC ¶¶ 115–16.

Under New York law, a claim for breach of fiduciary duty requires Plaintiff to allege "(1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3)

resulting damages." *Jones v. Voskresenskaya*, 5 N.Y.S.3d 16, 17 (1st Dep't 2015); *accord Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). A fiduciary relationship exists between two persons when "one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (2005) (citing Restatement (Second] of Torts § 874, Comment a). Such a relationship "is necessarily fact-specific" and "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *Id.* Unless the parties themselves "create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *Ne. Gen. Corp. v. Wellington Advert., Inc.*, 624 N.E.2d 129, 131 (N.Y. 1993). That one party may place subjective trust in the other does not establish such a relationship of higher trust; "[t]hat plaintiffs may have regarded defendants as their fiduciaries is not enough to establish a fiduciary duty when that duty otherwise would not exist." *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 572 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).

Plaintiff has not plausibly alleged that Spicer owed her a fiduciary duty. Plaintiff does not allege that Spicer had any relationship with LSSC beyond endorsing its investment scheme in messages provided to investors at arm's length.[12] *See A.I.A. Holdings, S.A. v. Lehman Bros.*, 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999) (soliciting investors does not establish a fiduciary duty on its own). Simply stating that Defendants "stood in a position of trust and confidence" toward her does not thereby confer fiduciary duties on them without facts plausibly alleging as

[12] Even if Plaintiff had alleged that Spicer had personally called her by telephone to promote LSSC to her, no fiduciary relationship would automatically have arisen. *See Vent v. Mars Snackfood US, LLC*, 611 F. Supp. 2d 333, 341 (S.D.N.Y. 2009), *aff'd*, 350 F. App'x 533 (2d Cir. 2009) (no fiduciary duty exists absent a long-standing business relationship, agreement to serve as a fiduciary, or special knowledge or skills).

much. FAC ¶ 115; *see Barbara v. MarineMax, Inc*., 2012 WL 6025604, at *11 (E.D.N.Y. Dec. 4, 2012) ("a conclusory allegation that the parties "developed a relationship of trust and confidence" is "insufficient to plead a fiduciary relationship and survive a motion to dismiss"); *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 F. App'x 12, 15 (2d Cir. 2018) (summary order) ("mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship").

Because Plaintiff has not plausibly alleged that Spicer owed her any fiduciary duty, Plaintiff's claim for breach of fiduciary duty against Spicer must be dismissed.[13]

### H. Negligent Infliction of Emotional Distress

Finally, Spicer seeks to dismiss Plaintiff's claim for negligent infliction of emotional distress ("NIED"). Dkt. No. 16 at 10. In her complaint, she states that Defendants owed her a "duty to exercise reasonable care so as not to expose" her to "unreasonable risk of financial loss." FAC ¶ 121. She alleges that they "negligently, recklessly, and carelessly" breached their contract with her, causing her "extreme financial loss," which produced "severe emotional distress" leading to hospitalization, sleeplessness, anxiety, depression, and loss of enjoyment of life. *Id.* ¶¶ 122, 124. She further alleges that this harm was "reasonably foreseeable as a consequence of defendant's negligence." *Id.* ¶ 125.

New York law recognizes "three distinct" forms of negligent infliction of emotional distress cases. *Kennedy v. McKesson*, 448 N.E.2d 1332, 1334 (N.Y. 1983). Two involve only those scenarios in which a physical injury results from the negligent action, and that injury

[13] Even if the Court were to construe her claim as alleging aiding and abetting breach of fiduciary duty, the contract between Plaintiff and LSSC constitutes the kind of arm's length business transaction that courts have routinely found insufficient to confer a fiduciary duty. *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011) ("a claim for aiding and abetting breach of fiduciary duty is dependent upon the underlying breach of fiduciary duty.").

produces compensable distress in either the injured party or a third person in the zone of danger. *See id.* at 1334–35. Relevant here is the third scenario: a plaintiff may also recover in tort where "there is a duty owed by defendant to plaintiff" that results "directly in emotional harm that is compensable even though no physical injury occurred." *Id.* at 1334. Most recently, the New York Court of Appeals has clarified that "a breach of the duty of care resulting in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than consequential, result of the breach, and when the claim possesses some guarantee of genuineness." *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (2d Dep't 2015) (quoting *Ornstein v. New York City Health & Hosps. Corp.*, 881 N.E.2d 1187, 1189 (N.Y. 2008)); *see Brown v. New York Design Center, Inc.*, 185 N.Y.S.3d 97, 103 (1st Dep't 2023); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

As a threshold matter, Plaintiff has not adequately alleged that Spicer owed a duty to her such that he could be found liable to her in tort. Any duty underlying an NIED claim must be plaintiff-specific and "foreseeability of harm alone does not create a duty." *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 131 (S.D.N.Y. 2023); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 594 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) ("the duty owed must be specific to the plaintiff"). The strict limits on NIED claims would be rendered illusory if the court imposed on a celebrity endorser such as Spicer an individualized duty of care toward every single viewer including Plaintiff who might rely on his endorsement at any point in time. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (the duty for NIED claims must not be "some amorphous, free-floating duty"). Moreover, because Plaintiff only plausibly alleges that LSSC as an entity, not Spicer personally, was responsible for fraudulently depriving her of investment money, and Spicer has no duty to "prevent injuries . . . caused by third

parties," Spicer has no special duty toward her. *McCollum*, 688 F. Supp. 3d at 131; *see also Francis*, 992 F. 3d at 81 (no duty to prevent third parties from injuring others "unless the defendant has the authority to control the conduct of such third parties").

Additionally, Plaintiff's allegations of emotional distress fail for the independent reason that they are entirely conclusory. *See* FAC ¶¶ 123–24; *Akhtar v. Aggarwala*, 2024 WL 3862504, at *12 (S.D.N.Y. June 5, 2024) (dismissing complaint where Plaintiff alleged that the "risk of losing his business has caused [him] severe distress, affecting his heath [sic] and well being"), *report and recommendation adopted sub nom. Akhtar v. Adams*, 2024 WL 3862673 (S.D.N.Y. Aug. 19, 2024).

Finally, the fourth element of an NIED claim, the guarantee of genuineness, is not satisfied. This guarantee guards against "the danger of vexatious suits and fictitious claims" stemming from the fact that "[m]ental disturbance is easily simulated." *Ferrara v. Galluchio*, 152 N.E.2d 249, 252 (N.Y. 1958). In cases that do not involve a physical injury or threat of an injury, such as this one, New York courts have recognized a limited set of circumstances that satisfy this guarantee, including, for example, the mishandling of a corpse and the transmission of false information that a close family member has died. *See Taggart*, 14 N.Y.S.3d at 396; *see also Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 675 (S.D.N.Y. 2025) ("[C]ourts have imposed liability on hospitals and funeral homes for negligently mishandling a corpse and on telegraph companies for negligently mistranscribing or misdirecting a telegram that informs the recipient, erroneously, about the death of a loved one.") (quoting Restatement 3d of Torts: Liability for Physical and Emotional Harm, § 47); *see also Ornstein v. N.Y.C. Health & Hosps. Corp.*, 881 N.E.2d 1187, 1189 (N.Y. 2008) (recognizing claim where plaintiff alleged emotional distress arising from negligent exposure to HIV). Plaintiff does not allege such circumstances here.

Therefore, the NIED claim must be dismissed.

## III. Leave to Replead

Defendant argues that the complaint should be dismissed with prejudice. The Court declines to do so. "[I]t is within the Court's discretion to *sua sponte* grant leave to amend." *Safe Step Walk in Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 271 (S.D.N.Y. 2017). District courts typically permit plaintiffs to amend and re-file deficient complaints, unless there are "extraordinary circumstances," such as when "the substance of the claim pleaded is frivolous on its face." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Rettino v. New York City Dep't of Educ.*, 2020 WL 4735299, at *6 (S.D.N.Y. Aug. 14, 2020) ("A court should grant a *pro se* plaintiff leave to replead his claims when it cannot 'rule out any possibility, however unlikely it may be, that an amended complaint would succeed in stating a claim.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir. 2000)).

Here, the Court cannot conclude that Plaintiff would be unable to allege any facts that would entitle her to pursue any of her claims. Therefore, because it is "usual practice upon granting a motion to dismiss to allow leave to replead," considering her *pro se* status, Plaintiff should be permitted to re-plead. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted).

## CONCLUSION

For the reasons stated, Plaintiff's complaint is DISMISSED without prejudice to repleading. Plaintiff must file any amended complaint by September 8, 2026 (60 days of the date of this Opinion and Order). The Clerk of Court is respectfully requested to close Dkt. No. 16.

SO ORDERED.

Date: July 10, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge